Filed 10/18/21  P. v. Wright CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DALLAS RAY WRIGHT,<br><br>　　Defendant and Appellant. | B311217<br><br>(Los Angeles County<br>Super. Ct. No. MA044175) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

In 2010, a jury convicted Dallas Ray Wright of two counts of willful, deliberate, and premeditated attempted murder, with gang and firearm enhancements. In 2021, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Wright petitioned for vacation of his attempted murder convictions and resentencing pursuant to Penal Code section 1170.95.[1] Finding Wright statutorily ineligible for relief, the trial court denied the petition, and Wright appeals. We affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The murder, Wright's conviction, and original appeal*

On November 25, 2008, Los Angeles County Sheriff's Detective Richard Cartmill and Sergeant Allen Harris were at a Lancaster mobile home park investigating graffiti related to the Mid Town Criminals (MTC) criminal street gang. They were in an unmarked vehicle, and were wearing civilian clothing. Harris pulled the car over on the wrong side of the road while Cartmill pointed out graffiti on one of the trailers. Cartmill observed Wright drive past in a Honda Civic, which slowed as it passed the officers' vehicle. Cartmill recognized Wright and knew him to be an MTC member who did not live in the mobile home park.

The officers decided to stop Wright to question him about the graffiti. They caught up with his car, displayed their badges, and yelled at him to stop. However, he sped off and led them on a

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We derive the factual and procedural background in part from our unpublished opinion in this case, of which we take judicial notice on our own motion. (Evid. Code, §§ 451, 459.)

2

five-to-ten minute pursuit in a "big circle" around east Lancaster. At one point, Wright appeared to be talking on a cellular telephone.

The officers followed Wright back to an area near an apartment complex next to the mobile home park. Wright's Honda slowed. Sixteen-year-old MTC gang member Marcos R. emerged from behind some bushes. Wright pointed at Marcos, then at the officers. Marcos immediately pulled out a gun and fired five to six shots at the officers, some of which hit their vehicle. Wright sped off and Marcos retreated into the mobile home park. After a search, Marcos was discovered hiding in the bathroom of a trailer home; a nine-millimeter semiautomatic pistol was also found in the bathroom. Wright was apprehended nearby.

After his arrest, Wright told detectives that he was driving away from the mobile home park when he saw the officers' vehicle. He believed they were rival gang members. Rival gang members had previously shot at his car, and when he saw the deputies' vehicle speed up, he fled. He telephoned Marcos and told him he was being chased. Marcos told him, " 'Don't even trip. I got you.' " Marcos suggested that Wright drive near some apartments near the mobile home park. He did so. After Wright passed Marcos, Wright heard gunshots. He was startled to learn the occupants of the vehicle following him were officers. He admitted knowing that Marcos had a gun, and expected Marcos to react violently in some fashion when his pursuers drove past.

At Wright's trial, the court instructed the jury on direct aiding and abetting and the natural and probable consequences doctrine. The jury convicted Wright of the willful, deliberate, and premeditated attempted murders of Harris and Cartmill (§§ 664,

187, subd. (a)), and two counts of assault with a semiautomatic firearm (§ 245, subd. (b)), a lesser included offense of assault on a peace officer with a semiautomatic firearm.  As to each offense, the jury also found true a section 186.22 gang enhancement, and that a principal personally used and discharged a firearm (§ 12022.53, subds. (b), (c), & former (e)(1)).[3]  The trial court sentenced Wright to 40 years to life in prison.

A different panel of this Division affirmed Wright's judgment, with a minor sentence modification, in 2011.  (*People v. Wright* (Dec. 1, 2011, B226877) [nonpub. opn.].)

2.  *The section 1170.95 petition*

On January 26, 2021, Wright filed a section 1170.95 petition for vacation of his attempted murder convictions and resentencing.  He averred that the jury's verdicts were premised on the natural and probable consequences doctrine, and "[b]ased on [S]enate [B]ill 1437 (P.C. sec. 1170.95) my sentence is invalid and unlawful."  He appended to his petition a portion of the jury instructions in the case and the verdict forms.  He also requested the appointment of counsel.

On January 28, 2021, the trial court summarily denied the petition.  Wright was not present, and was not represented by counsel.  The court took judicial notice of the trial court records in the case, and reasoned as follows.  "The record reveals that the defendant herein was convicted of two counts of **attempted** murder, and two counts of assault with a firearm on a peace officer.  He was not charged with, nor was he convicted of, murder, under any theory.  Because the defendant was not

---

[3]     The jury did not render a finding on allegations that Wright knew, or reasonably should have known, that the victims were peace officers engaged in the performance of their duties.

4

convicted of murder, Penal Code section 1170.95 does not apply to him. [Citation.] The Petition is **DENIED** for failure to establish a prima facie case. (Pen. Code sec. 1170.95(c).)" (Fn. omitted.) The court acknowledged that the question of Senate Bill 1437's application to attempted murder was on review before the California Supreme Court, but observed that no published appellate case had ever found Senate Bill 1437 applied retrospectively to cases that were final before the bill's passage.

Wright timely appealed the trial court's order.

## DISCUSSION

Wright contends that the trial court erroneously concluded section 1170.95 does not apply to attempted murder convictions, and improperly denied the petition on that basis. We disagree.

1. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971.) To achieve these goals, Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only under specified conditions. Senate Bill 1437 also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

5

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he or she meets three conditions: he or she (1) must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a felony murder or natural and probable consequences theory; (2) must have been "convicted of first or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder"; and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

To obtain section 1170.95 relief, the defendant must file a petition with the sentencing court that contains, among other things, a " 'declaration by the petitioner that he or she is eligible for relief under [section 1170.95], based on all the requirements of subdivision (a).' " (*People v. Lewis, supra,* 11 Cal.5th at p. 968.) The defendant is entitled to the appointment of counsel, if requested, upon the filing of a facially sufficient petition. (*Id.* at p. 957.) After briefing by the parties, the court determines whether the petitioner has made a prima facie case for entitlement to relief. (*Id.* at pp. 957, 966, 968.) In making that determination, the court may consider the record of conviction. (*Id.* at pp. 957, 960, 970–971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at

6

p. 971.) If the record, including the court's own documents, " ' "contain[s] facts refuting the allegations made in the petition," ' " then the court may determine that the petitioner has not made a prima facie case. (*Ibid*.) If, on the other hand, the trial court determines that the petitioner has made a prima facie showing, it must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At that hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt. (§ 1170.95, subd. (d)(3).)

   2. *Wright is statutorily ineligible for relief as a matter of law because he was not convicted of murder*

   Wright's sole contention on appeal is that, contrary to the trial court's ruling, section 1170.95 applies to convictions for attempted murder.[4] He acknowledges that the appellate courts, including this one, have uniformly rejected this view. However, he contends that these cases were wrongly decided, and notes that the question of whether Senate Bill 1437 applies to attempted murder liability under the natural and probable consequences doctrine is currently pending before our Supreme

---

[4] Wright does not assert that the trial court erred by failing to appoint counsel for him, and therefore we do not consider that question except to note that the failure to appoint counsel under these circumstances is state law error only, subject to the harmless error test articulated in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Lewis, supra,* 11 Cal.5th at pp. 957–958.) Because Wright is ineligible for section 1170.95 relief as a matter of law, there is no reasonable probability that, had counsel been appointed, the result would have been more favorable to him.

Court.  (*People v. Lopez,* S258175.)  Therefore, he advises that he raises the issue to preserve it for further appellate review.

All the appellate courts that have considered whether section 1170.95 covers attempted murder convictions have held it does not.  *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted Nov. 13, 2019, S258175, and this court in *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted Nov. 26, 2019, S258234, considered whether Senate Bill 1437 applied retroactively to invalidate attempted murder convictions that were not yet final on appeal.  Both cases concluded the law did not extend to attempted murder, based on the plain language of the statutory amendments and the legislative history.  (See *Lopez,* at pp. 1104–1105; *Munoz,* at pp. 753–754, 757, 763–764.) *Lopez* found the language of section 1170.95 underscored the Legislature's obvious intent to exclude attempted murder from Senate Bill 1437's ambit:  "Section 1170.95, subdivision (a), authorizes only those individuals 'convicted of felony murder or murder under a natural and probable consequences theory' to petition for relief" and thus "exclud[es] any relief for individuals convicted of attempted murder[.]"  (*Lopez,* at pp. 1104–1105.)

Thereafter, the Fifth Appellate District disagreed with *Lopez* and *Munoz* and concluded that Senate Bill 1437 abrogated the continuing application of the natural and probable consequences doctrine as it applied to both murder and attempted murder, and defendants were entitled to relief on direct appeal.  (*People v. Medrano* (2019) 42 Cal.App.5th 1001, 1007–1008, review granted March 11, 2020, S259948.) Nonetheless, even *Medrano* concluded that section 1170.95 does not encompass attempted murder:  "We agree with the reasoning of *Lopez* and *Munoz* that the relief provided in section 1170.95 is

8

limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder." (*Medrano*, at p. 1018; *People v. Larios* (2019) 42 Cal.App.5th 956, 961, 969, review granted Feb. 26, 2020, S259983 [plain language of section 1170.95 "provides no relief for the crime of attempted murder" and legislative history supports this conclusion].)

Other courts considering the question have likewise concluded that Senate Bill 1437 or section 1170.95 do not extend to attempted murder. (*People v. Harris* (2021) 60 Cal.App.5th 557, 563, 569, review granted April 21, 2021, S267529 ["section 1170.95 does not provide relief for those convicted of . . . attempted murder"]; *People v. Dennis* (2020) 47 Cal.App.5th 838, 841, review granted July 29, 2020, S262184 [Senate Bill 1437 "reaches the crime of murder but has no application to attempted murder"]; *People v. Love* (2020) 55 Cal.App.5th 273, 279, 292, review granted Dec. 16, 2020, S265445 ["Senate Bill 1437 does not eliminate the natural and probable consequences theory for attempted murder on *any* basis—either prospectively or retroactively"; section 1170.95 applies only to persons seeking to vacate a conviction for murder]; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222 ["Senate Bill 1437 does not apply to attempted murder"]; cf. *People v. McClure* (2021) 67 Cal.App.5th 1054, 1069 [section 1170.95 inapplicable to voluntary manslaughter; statute "limits its resentencing relief to individuals convicted of murder" and rule of lenity inapplicable because statute's plain language is unambiguous]; *People v. Flores* (2020) 44 Cal.App.5th 985, 993 [section 1170.95 is inapplicable to voluntary manslaughter convictions; "[t]hrough its repeated and exclusive references to murder, the plain

language of section 1170.95 limits relief only to qualifying persons who were convicted of murder"].)

Wright makes several arguments aimed at showing these authorities were wrongly decided, as follows. Excluding attempted murder from section 1170.95 would lead to absurd results. The "notion that one can be held criminally liable for another's homicidal conduct only if the intended victim survived but not if the victim died is incoherent, legally impermissible, and not what the amended Penal Code provides." Remedial benefits should extend to lesser included offenses, and attempted murder is a lesser included offense of murder. Remedial statutes should be liberally construed. Cases construing Proposition 47 have held that its provisions encompass crimes that are not specifically enumerated; by analogy, the same should be true in regard to section 1170.95. And, excluding attempted murder from section 1170.95's ambit would violate equal protection principles.

We, or the other authorities cited *ante,* have already considered the bulk of these arguments at length and have rejected them. We need not repeat those analyses here. Pending further guidance from our Supreme Court, nothing in Wright's arguments convinces us that our or the aforementioned courts' analyses of the question were incorrect. Accordingly, we discern no reversible error in the trial court's ruling, and affirm the order.

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.